UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| STEPHEN E. EBERHARD, | Case No. 14-cv-01910-JD |
|---|---|
| Plaintiff, | |
| v. | **ORDER GRANTING MOTIONS TO DISMISS** |
| CALIFORNIA HIGHWAY PATROL, et al., | Dkt. Nos.: 23, 32 |
| Defendants. | |

This lawsuit arises out of allegations by plaintiff Stephen Eberhard, a photojournalist, that he was harassed and unlawfully arrested by officers of the California Highway Patrol. Eberhard sued the arresting officers, the California Highway Patrol, the California Department of Transportation, California Highway Patrol Chief Bridget Lott, and California Department of Transportation District 1 Director Charlie Fielder. Lott and Fielder are alleged to have jointly released after Eberhard's arrest a "letter to the editor" missive discussing their respective government agencies' roles in the incident. Lott wrote an additional letter to a journalism organization defending the California Highway Patrol's conduct.

Defendants California Department of Transportation, Fielder, and Lott move to dismiss Eberhard's claims against them under Federal Rule of Civil Procedure 12(b)(6). The motions involve only a portion of the claims in the first amended complaint. The unaffected claims will continue to move forward. For the challenged claims, the Court grants the motions and dismisses them without prejudice and subject to an opportunity to re-plead, if Eberhard is so inclined.

## I. FACTUAL BACKGROUND

As alleged in the first amended complaint, Eberhard is a photojournalist for The Willits News ("TWN"), a newspaper in Willits, California. Dkt. No. 26 ¶ 5. He has been active in covering the Willits Bypass Project, a highway construction project involving a 5.9 mile long,

four-lane freeway around Willits. *Id.* ¶ 14. The project is overseen by the California Department of Transportation ("Caltrans"), and has been the subject of lawsuits, protests, and media coverage. *Id.* ¶¶ 7, 14-16. Eberhard alleges that from April to July 2013, he was harassed and intimidated by officers of the California Highway Patrol ("CHP"). *Id.* ¶¶ 17-24. After complaints from TWN, Caltrans assigned a media representative to escort TWN reporters and photographers around the project area, but Eberhard alleges that this did not prevent more harassment by the CHP. *Id.* ¶¶ 22-24.

Events culminated in Eberhard's arrest by CHP officers the morning of July 23, 2013, immediately after a protest on the project site. *Id.* ¶¶ 26-39. Eberhard was held in a patrol car and later taken to Mendocino County Jail, where he was released after spending about two hours in a cell. *Id.* ¶ 36.

In the days following his arrest, a number of editorials condemning CHP's arrest of Eberhard appeared in newspapers throughout California. *Id.* ¶ 41. In response to these editorials, CHP Chief Bridget Lott and Caltrans District 1 Director Charlie Fielder jointly wrote a letter to the editor stating, among other things, that Eberhard was arrested because he had "trespassed" and "refused a lawful order to exit." *Id.* ¶ 42. The letter was published in a number of newspapers in California. *Id.* ¶ 43. Lott and Fielder published a modified version of the letter in TWN and its sister papers: Instead of saying that Eberhard failed to obey a lawful order, the modified letter is alleged to have stated that Eberhard was directed by an officer to leave and that he was arrested not because of his profession but because he refused to leave a construction site. *Id.* ¶ 43.

On August 2, 2013, in response to a letter written to the CHP Commissioner by a journalism organization called the Society of Environmental Journalists protesting against the CHP's treatment of Eberhard, Lott wrote an additional letter to the Society defending CHP's actions. *Id.* ¶ 44. The portion of the letter excerpted in Eberhard's first amended complaint states:

> [H]e had visited the site many times since early February 2013, and had been granted access without incident. In other situations he was on site as part of a protest contingent, but had left voluntarily with the protesters when asked.
>
> Gaining access to the issues that make up the news is at the heart of the journalistic enterprise and the CHP takes seriously its role in

> facilitating that process. The CHP does not want to see any member of the media arrested. Unfortunately, on this particular day, Mr. Eberhard declined to conform to the well-defined set of operating standards. It was explained to him, no less than three times, that he was putting himself in a situation which could lead to arrest. Though originally acting as part of a group of protesters, when all other protesters had left the site as requested, Mr. Eberhard remained.
>
> He was given additional time to leave but chose not to, leaving officers with no other course of direction but to take him into custody for trespassing; for his safety, the safety of the workers, and the operational necessity of the project.

*Id.* ¶ 44.

On March 27, 2014, Eberhard brought suit in California state court, alleging a number of statutory and constitutional violations. Dkt. No. 1 ¶ 1. He named as defendants the CHP and the CHP officers who allegedly harassed and arrested him, as well as Caltrans, Lott, and Fielder. *Id*. The case was removed to this Court on April 24, 2014. Dkt. No. 1.

Caltrans, Fielder, and Lott (who is now retired) have moved to dismiss counts five, seven, and twelve of Eberhard's first amended complaint with respect to themselves. Count five alleges that Lott and Fielder violated Eberhard's First Amendment rights (as applied to California under the Fourteenth Amendment). Dkt. No. 26 ¶¶ 76-83. Count seven alleges that Caltrans engaged in false arrest and false imprisonment along with the CHP. *Id.* ¶¶ 91-99. Count twelve seeks declaratory relief against all defendants. *Id.* ¶¶ 127-29. Lott also argues that she is protected from suit by qualified immunity. Dkt. No. 32 at 6-9.

Eberhard does not allege that Lott and Fielder were personally involved in the alleged harassment and arrest. Rather, his claims against them are based on their joint letter to the editor and (with respect to Lott) her subsequent letter to the Society of Environmental Journalists.

## II. LEGAL BACKGROUND

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that the defendants are liable for the misconduct alleged. *Id.* While a court "must take all of the

3

factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. (internal quotes omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

## III. DISCUSSION

### A. First Amendment Retaliation Claim

Count five of Eberhard's first amended complaint is a civil rights claim under 42 U.S.C. § 1983 alleging that Lott and Fielder violated his First Amendment rights as applied through the Fourteenth Amendment. Dkt. No. 26 ¶¶ 76-83. The gist of the claim is that Lott and Fielder "conspired to destroy Eberhard's credibility as a neutral fact gatherer" by falsely portraying him in the challenged letters to the editor as a protester rather than a journalist, and accusing him of refusing to obey lawful orders by the CHP. *Id*. at ¶ 79.[1]

To state a claim for relief under Section 1983, a plaintiff must adequately plead that he or she was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

"The law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions … for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). To make out a claim against a government official for retaliation under the First Amendment, "a plaintiff must provide evidence showing that by his actions [the defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 916 (9th Cir. 2012) (en banc) (internal quotes omitted, alterations in original). In

---

[1] Although the First Amendment claim is not presented as a Section 1983 conspiracy claim in Eberhard's complaint, Dkt. No. 26 ¶¶ 76-83, Eberhard argues in passing that the complaint also adequately pleads a conspiracy to violate Eberhard's First Amendment rights, Dkt. No. 27 at 9. To the extent the First Amendment claim can be construed as a conspiracy claim, it is doomed at the outset by Eberhard's admission that he "did not specifically state in the [first amended complaint] that Fielder and Lott had 'a meeting of the minds'" in jointly authoring the letter. *Id.* "To show a conspiracy between the defendants under § 1983, plaintiffs must allege an agreement or meeting of the minds to violate constitutional rights." *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540–41 (9th Cir. 1989) (en banc) (internal quotations omitted).

4

assessing whether speech is chilled, courts look to "whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Id.* at 916-17.

Consequently, to state a viable Section 1983 claim, Eberhard must plead facts sufficient to support a plausible inference that Lott and Fielder acted with retaliatory motive and that their actions had a chilling effect. He has failed to do that.

**1. Retaliatory Motive**

The first flaw in the Section 1983 claim is Eberhard's failure to state facts establishing that Lott and Fielder acted with a retaliatory motive. Eberhard's first amended complaint states that Lott and Fielder acted with a retaliatory motive, and his counsel at the hearing insisted this was so. Dkt. No. 26 ¶¶ 45, 80. But the first amended complaint pleads motive purely as a conclusion untethered to any facts or evidentiary support.

The Supreme Court has explained that a court considering a motion to dismiss can begin by stripping away "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determining whether the remaining well-pleaded factual allegations, taken as true, plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 679.[2] Most of what Eberhard points to in the first amended complaint to support his claim that Lott and Fielder acted with retaliatory motive falls into this category. For example, his allegations that "Lott's and Fielder's actions were undertaken for the purpose of intimidating and chilling the exercise of Eberhard's First Amendment rights" and were "in further retaliation for his legitimate newsgathering activities" are prime examples of irrelevant "labels and conclusions." Dkt. No. 26 ¶ 80; *Twombly*, 550 U.S. at 555. Shorn of this rhetoric, nothing remains in the first amended complaint to support the claim that Lott and Fielder acted with retaliatory motive.

---

[2] Caltrans and Fielder argued in a reply brief that "a heightened pleading standard applie[s]" to the requirement of retaliatory motive, citing *Mendocino Env. Ctr. v. Mendocino Cnty.* (*Mendocino I*), 14 F.3d 457, 464 (9th Cir. 1994). Dkt. No. 31 at 3-4. That is wrong. There is no heightened pleading requirement under current Supreme Court precedent, as the Ninth Circuit has recognized. *See Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1123-26 (9th Cir. 2002) (discussing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993), and *Crawford-El v. Britton*, 523 U.S. 574 (1998)).

Eberhard argues that Lott's alleged dissemination in the weeks following the arrest of "false information about the circumstances of Eberhard's arrest is consistent with a desire to create a negative impression in the minds of the public." Dkt. No. 37 at 10. But allegations that are merely *consistent* with a claim to relief are precisely what *Iqbal* found wanting. *Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'") Eberhard must plead facts that are not only consistent with a retaliatory motive, but plausibly demonstrate it.

It is true that retaliatory motive may be shown by circumstantial evidence, such as the timing of the allegedly retaliatory act and inconsistency with previous actions, as well as by direct evidence. *Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2003). But the fact that Lott and Fielder's letters were published within a few weeks of Eberhard's arrest is not, by itself, sufficient to plausibly suggest retaliatory animus. Eberhard's claim that Lott and Fielder conspired to retaliate against him simply because they wrote a joint letter echoes the allegations of parallel behavior by telecommunications providers at issue in *Twombly*, which the Supreme Court found insufficient to plausibly suggest the existence of an antitrust conspiracy. *Twombly*, 550 U.S. at 564-67. As in *Twombly*, there is an "obvious alternative explanation" for the conduct: Lott and Fielder's desire to defend CHP and Caltrans' actions. *Id*. at 567. This alternative explanation is every bit as "consistent with" the timing of the letters as Eberhard's theory of retaliatory animus because Lott and Fielder would have wanted to respond to the coverage of Eberhard's arrest while it was still in the news. Because the well-pleaded facts do not add up to a plausible claim that Lott and Fielder acted with a retaliatory motive, Eberhard's first amended complaint does not state a claim against them for violating his First Amendment rights.

### 2. Chilling Effect

Eberhard's first amended complaint fares no better when it comes to alleging that Lott and Fielder's letter-writing campaign had a chilling effect. It is simply implausible that writing a letter to the editor setting forth Caltrans and CHP's version of the arrest and (in Lott's case) writing a similar letter to a journalism organization "would chill or silence a person of ordinary firmness from future First Amendment activities." *Lacey*, 639 F.3d at 916-17. Where government conduct

has been found to have a chilling effect, it has been "regulatory, proscriptive, or compulsory in nature." *Laird v. Tatum*, 408 U.S. 1, 11 (1972). Consistent with this principle, the Ninth Circuit has held that allegations of defamation and damage flowing from it, standing alone, cannot state a First Amendment claim against a public official. *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1045 (9th Cir. 1994). Eberhard's first amended complaint does not allege that Lott and Fielder did anything more than potentially defame him.

None of the cases Eberhard cites compels a different result. Eberhard sets great store by the Ninth Circuit's decision in *White v. Lee*, but stretches that case beyond what its holding will bear. 227 F.3d 1214 (9th Cir. 2000). In *White*, the plaintiffs, three residents of Berkeley, California, led a campaign against the conversion of a local motel into multi-family housing for homeless persons. *Id.* at 1220-21. Following a complaint by a housing rights advocacy group, the San Francisco office of the U.S. Department of Housing and Urban Development (HUD) launched a long and invasive investigation to determine whether the plaintiffs had engaged in unlawful discriminatory housing practices. *Id.* at 1222. The investigation lasted over eight months (considerably longer than the presumptive 100-day time limit set by statute for such investigations) and involved HUD officials threatening the plaintiffs with subpoenas in order to obtain answers to "extremely broad" requests for information and demanding answers to questions that even HUD's own investigator characterized as "irregular" and "beyond the routine scope of a routine [Fair Housing Act] investigation." *Id.* at 1223-24, 1228.

The plaintiffs filed suit against five HUD officials involved in the investigation, claiming that their First Amendment rights had been violated. *Id.* at 1225-26. The district court granted plaintiffs summary judgment, and the Ninth Circuit affirmed, finding that the actions of the HUD officials would have chilled or silenced a person of ordinary firmness from engaging in future First Amendment activities. *Id.* at 1225-26, 1229.

As the Ninth Circuit emphasized, *White* turned on the fact that the government defendants had invoked the coercive power of the state through a tortuous and threatening administrative investigation. *See id.* at 1239 ("It is the scope and manner of the investigation that the HUD officials should have known to be violative of the plaintiffs' First Amendment rights.") True, one

of the HUD defendants, John Phillips, was accused only of telling the San Francisco *Examiner* that the plaintiffs had violated the Fair Housing Act. *Id.* at 1224. But this remark was in the context of the government's overall attack on the plaintiffs, and his full quote was "that HUD's preliminary investigation had concluded [the plaintiffs] had broken the law, but that it would be up to HUD and Justice Department attorneys to decide whether to prosecute." *Id*. Under the circumstances, his words were not just part and parcel of HUD's unlawful investigation, but also adverted to the very real possibility that the investigation would result in future legal action against the plaintiffs. That is not the case with respect to the letters written by Lott and Fielder. In the First Amendment context, "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird*, 408 U.S. at 13-14.

Similarly, the *Mendocino Env. Ctr. v. Mendocino Cnty.* (*Mendocino I*), 14 F.3d 457 (9th Cir. 1994), and *Mendocino Env. Ctr. v. Mendocino Cnty.* (*Mendocino II*), 192 F.3d 1283 (9th Cir. 1999), cases Eberhard cites involved far more than accused speech. In those cases, environmental activists sued FBI agents and state officials for alleged civil rights violations in connection with a car bombing. *Mendocino I*, 14 F.3d at 459; *Mendocino II*, 192 F.3d at 1288-91. In *Mendocino I*, involving the FBI agents, the Court noted that the alleged conspiracy to deprive the activists of their First Amendment rights included the false arrests of plaintiffs and fraudulently-procured search warrants. *Mendocino I*, 14 F.3d at 465. In *Mendocino II*, involving officers of the Oakland Police Department, the Court relied not just on allegations that the officers had engaged in pure speech, but also allegations that they were responsible for misinformation and material omissions in search warrant affidavits during the investigation of the activists. *Mendocino II*, 192 F.3d at 1302-03. In contrast to these cases, there is no allegation that Lott and Fielder made "any decision or [took] any state action affecting [the plaintiff's] rights, benefits, relationship or status with the state." *Gini*, 40 F.3d at 1045.

Eberhard's reliance on *Molokai Veterans Caring for Veterans v. Cnty. of Maui* is also misplaced. *See* No. 10-cv-00538-LEK, 2011 WL 1637330 (D. Haw. Apr. 28, 2011). There, MCVC, a Hawaiian veterans organization, was involved in a protracted dispute with local

8

1    government officials while attempting to secure a building permit for the construction of a
2    veterans center. *Id.* at *1. After one of the plaintiffs wrote an email accusing county officials of
3    treason, the county mayor allegedly threatened to withhold the building permit unless the plaintiff
4    wrote a letter of apology -- an action the Court found was retaliatory and violated the plaintiff's
5    First Amendment rights. *Id.* at *4, *19-20. It was this threat of state action -- withholding the
6    building permit -- that was the basis for the First Amendment retaliation claim. *Molokai* has little
7    relevance here because neither Lott nor Fielder is alleged to have threatened Eberhard with
8    withholding a government benefit or with any other adverse consequence at the hands of the state.

9        Eberhard argues that even absent an actual chilling effect, his allegations that "he was
10   temporary [sic] taken off the bypass project by TWN" and that the letters "damaged his credibility
11   as a neutral fact gather [sic]" are sufficient. Dkt. No. 26 ¶ 81. The latter of these allegations is
12   simply a "naked assertion[] devoid of further factual enhancement," which *Iqbal* held to be
13   insufficient to support a claim. *Iqbal*, 556 U.S. at 678. As for the former, the Ninth Circuit has
14   indeed suggested in dicta that "perhaps" an allegation of actual harm may suffice to state a First
15   Amendment claim in lieu of a chilling effect. *Rhodes v. Robinson*, 408 F.3d 559, 567 n.11 (9th
16   Cir. 2005). But in this case, the putative harm -- the opportunity to cover a particular news story --
17   was inflicted by Eberhard's own employer, not by Lott or Fielder. There is no allegation here of
18   "actual harm" that can substitute for the requirement that a chilling effect be pleaded.

19       Because Eberhard has failed to plead the necessary requirements of retaliatory motive and
20   chilling effect, the Section 1983 claim against Lott and Fielder in count five based on the First
21   Amendment is dismissed.

22   **B. Due Process Claim**

23       Eberhard also appears to claim that the letters written by Lott and Fielder violated his due
24   process rights under the Fourteenth Amendment. Dkt. No. 27 at 9. To be clear, he alleges this
25   claim solely against Lott and Fielder as individuals. The first amended complaint offers little in
26   the way of facts to support this claim or to explain the liberty or property interests allegedly
27   compromised. The parties briefed the issue in some detail and discussed it at the hearing, but their
28   arguments also did not shed much light on the nature of this claim. The Court has done its best to

understand the claim in the face of these deficiencies, and addresses it here to explain why it is inadequate as currently pleaded and to guide any potential amendments Eberhard may make to it in the next round of pleadings.

It is axiomatic -- as Eberhard concedes -- that "injury to reputation, standing alone, is not a liberty or property interest sufficient to invoke the procedural protections contained in the Due Process Clause of the Fourteenth Amendment[.]"  Dkt. No. 27 at 10; *see also Paul v. Davis*, 424 U.S. 693, 711-12 (1976).  *Paul* did, however, leave open the door to what has come to be known as a "stigma-plus" claim, "which requires that the complaint allege that the state action not only caused the stigma of a damaged reputation, but also that the state action deprived the plaintiff of a protected liberty or property interest or a status recognized by the state."  *WMX Techs., Inc. v. Miller*, 197 F.3d 367, 376 (9th Cir. 1999) (en banc).  As the Ninth Circuit holds, a plaintiff can meet the stigma-plus test for Section 1983 purposes by alleging either that (1) the injury to reputation caused the denial of a federally protected right (e.g., accusations made in the press by a prosecutor to deny a defendant an impartial jury under the Sixth Amendment); or (2) the injury to reputation was inflicted in connection with a federally protected right (e.g., defamation in the course of termination of public employment by the state).  *Cooper v. Dupnik*, 924 F.2d 1520, 1532 (9th Cir. 1991).

To the extent Eberhard has tried to state a due process claim, he failed to allege sufficient facts in the first amended complaint to satisfy the plausibility requirement under *Iqbal*.  More specifically, Eberhard fails to allege facts showing that the alleged "stigma" and "plus" are sufficiently coincident to support a due process claim against Lott and Fielder.  The alleged stigma Eberhard proffers is the letter to the editor written by Lott and Fielder, as well as Lott's subsequent letter to the Society of Environmental Journalists, which Eberhard alleges were defamatory.  The "plus" Eberhard points to is his arrest by the CHP, which occurred at least several days before the letters were released.  As Eberhard conceded at oral argument, Lott and Fielder are not alleged to have been *personally* responsible for Eberhard's arrest, and Section 1983 does not allow recovery based on a theory of *respondeat superior* (that is, officials are not vicariously liable for the unconstitutional conduct of their subordinates).  *Iqbal*, 556 U.S. at 676.

10

Consequently, as currently alleged, the first amended complaint draws clear distinctions between the occurrence of the alleged stigma and plus factors, and among the government actors involved in them.

These disparate facts cannot be aggregated into a due process claim against the individual defendants. Our circuit does not appear to have directly decided whether the "stigma" and "plus" must be committed by the same government actor. The circuits that have are split. *Compare URI Student Senate v. Town of Narragansett*, 631 F.3d 1, 10 (1st Cir. 2011) ("Where the stigma and the incremental harm -- the 'plus' factor' -- derive from distinct sources, a party cannot make out a viable procedural due process claim … even if both sources are government entities.") and *Hawkins v. Rhode Island Lottery Commission,* 238 F.3d 112, 115-16 (1st Cir. 2001) (affirming dismissal of stigma-plus due process claim where different individual actors were responsible for different conduct) *with Velez v. Levy*, 401 F.3d 75, 88-89 (2d Cir. 2005) (holding that "[t]here is no rigid requirement … that both the 'stigma' and the 'plus' must issue from the same government actor or at the same time" if the stigma and plus reasonably appear connected or the "plus" actor adopted the statements).

The Ninth Circuit's decision in *Cooper* comes closest to addressing the issue. There, one of the plaintiffs, Michael Cooper, was arrested on suspicion of being a serial rapist. *Cooper*, 924 F.2d at 1524. Despite knowing that the evidence on which the arrest was made was incorrect and the result of negligence, Peter Ronstadt, the Tucson Chief of Police, gave a press conference defending the arrest and making what the plaintiff contended were defamatory and false statements about him. *Id.* at 1525. The Ninth Circuit found that Ronstadt had violated Cooper's constitutional rights based on a "stigma-plus" theory. *Id.* at 1534-36. To be sure, the circuit court's opinion is not crystal clear as to what role Ronstadt played in Cooper's arrest. But the opinion repeatedly refers to Ronstadt's personal responsibility for Cooper's arrest and for the allegedly defamatory remarks -- the holding turns on the fact that Ronstadt was personally involved in both events. The Ninth Circuit emphasized that "part of the alleged due process violation perpetrated *by Ronstadt* was the false arrest … So even if true that Ronstadt had to say something, he put himself in this position by *his own* allegedly wrongful conduct." *Id.* at 1536

11

(emphasis added); *see also id.* at 1534 ("Ronstadt's statements were intertwined with *his* arrest of Cooper") (emphasis added).

Although *Cooper* stops just short of expressly holding that the "stigma" and "plus" must be perpetrated by the same actor, the Court finds it to be consistent with the approach adopted by the First Circuit discussed above. *See also Tibbets v. Kulongoski*, 567 F.3d 529, 538-39 (2009) (rejecting due process claim against governor who made allegedly stigmatizing statement after unconstitutional termination by another government agency, despite having recommended the termination). Consequently, the Court determines that the "stigma" and "plus" must be committed by the same state actor to state a due process claim with respect to claims against individual government officials. Permitting a "stigma-plus" claim solely where (as the Second Circuit would allow) the "stigma" and the "plus" merely appear to a reasonable observer to be connected to an injury would result in a government actor being liable under Section 1983 solely because of the actions of other government actors, even when she did not herself participate in those actions. That casts too broad a net. Requiring a closer degree of coincidence is also more consistent with *Iqbal*'s teaching that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

These considerations doom Eberhard's incipient due process claim, at least as currently alleged. Eberhard's allegations undermine rather than establish the coincidence of the stigma and plus factors. As the Court has found, that pleading alleges that different actors were responsible for the alleged stigma and plus factors. Indeed, Eberhard admits that Lott and Fielder were not involved in his arrest. This will not do, and the claim is therefore dismissed.

**C. False Arrest and False Imprisonment Claim**

False imprisonment under California law is the "unlawful violation of the personal liberty of another." *Asgari v. City of Los Angeles*, 63 Cal. Rptr. 2d 842, 850 (Cal. Ct. App. 1997). False arrest is not a different tort; it is merely "one way of committing a false imprisonment." *Collins v. City & Cnty. of San Francisco*, 123 Cal. Rptr. 525, 526 (Cal. Ct. App. 1975).

Count seven of Eberhard's first amended complaint, for false arrest and false imprisonment, is the sole count alleged against Caltrans. However, the allegations in the count

themselves mention only the CHP officer defendants, not Caltrans. Dkt. No. 26 ¶¶ 91-99. In defending this cause of action with respect to Caltrans, Eberhard relies solely on allegations from elsewhere in the first amended complaint incorporated by reference into the count. Dkt. No. 26 ¶ 91. Specifically, Eberhard points to paragraphs in the first amended complaint alleging that "CALTRANS Doe employees established policies, practices and procedures for press access to the bypass project area and provided direction to CHP personnel for carrying out same" and Caltrans' District 1 Director, Charlie Fielder,

> was at all times herein alleged aware of the harassment, intimidation and threats of arrest made by CHP officers against individual members of the press, and he authorized, ratified, condoned and/or directed the conduct of CHP personnel acting on behalf of or at the behest of CALTRANS and the property owner, which caused, in whole or in part, the harassment and intimidation and ultimately warrantless arrest without probable cause of Eberhard.

Dkt. No. 26 ¶¶ 7, 13. As with the allegations discussed earlier, these are simply legal conclusions; they are not assumed to be true as factual allegations in a complaint are at this stage. Moreover, even if believed, these paragraphs do not specifically allege that Caltrans was responsible for the unlawful violation of Eberhard's personal liberty, as opposed to simply the conduct of CHP personnel generally. The Court therefore dismisses count seven with respect to Caltrans.

**D. Qualified Immunity**

As an alternative basis for dismissal of the Section 1983 claim, Lott requests qualified immunity. Qualified immunity is the privilege of a government official in certain circumstances "not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 525-26 (1985); *Hopkins v. Bonvicino*, 573 F.3d 752, 762 (9th Cir. 2009). Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011). As the Ninth Circuit has found, the first prong "calls for a factual inquiry" while the second is "solely a question of law for the judge." *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010).

The Supreme Court has "'repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in the litigation.'" *Id*. (quoting *Hunter v. Bryant*, 502 U.S.

224, 227 (1991)). While the Court fully embraces this teaching, as it must, it defers consideration of qualified immunity in light of the fact that Eberhard's current claims against Lott are not properly pleaded and are dismissed on that basis. This is not a denial, implicit or otherwise, of qualified immunity; it is merely a deferral of the issue pending amendment, if any. Lott retains the right to renew her qualified immunity defense in response to any causes of action asserted against her in an amended complaint, if Eberhard chooses to file one.

### E. Declaratory Relief

Eberhard's claims against Fielder, Caltrans, and Lott for declaratory relief in count twelve stand and fall based on the underlying claims against those parties. Dkt. No. 26 ¶¶ 127-29. Since the Court has already concluded that the underlying claims must be dismissed, it follows that count twelve must also be dismissed with respect to those defendants.

## IV. CONCLUSION

Caltrans, Fielder, and Lott's motions to dismiss counts five, seven, and twelve of Eberhard's first amended complaint are granted because they are inadequately pleaded. The dismissal is without prejudice, so Eberhard is free to replead these counts. An amended complaint is due by November 26, 2014, if Eberhard chooses to file one. No new causes of action or parties may be added -- the amendments may seek only to cure the defects in the dismissed claims. The defendants' response to the amended complaint is due on December 17, 2014. If warranted, the Court will set a briefing and hearing schedule on qualified immunity promptly after the next round of pleading.

**IT IS SO ORDERED**.

Dated: November 6, 2014

_____
JAMES DONATO
United States District Judge