UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEPHEN E. EBERHARD,

    Plaintiff,

    v.

CALIFORNIA HIGHWAY PATROL, et al.,

    Defendants.

Case No. 14-cv-01910-JD

**ORDER GRANTING MOTIONS TO DISMISS**

Re: Dkt. Nos. 60, 67

This lawsuit was brought by Stephen Eberhard, a photojournalist, who alleges that he was harassed and unlawfully arrested by officers of the California Highway Patrol ("CHP"). In addition to suing the CHP and the officers themselves, Eberhard also sued the California Department of Transportation (known as "Caltrans"), California Highway Patrol Chief Bridget Lott, and California Department of Transportation District 1 Director Charlie Fielder. The Court previously dismissed his allegations against the latter three defendants, but gave Eberhard an opportunity to amend his complaint to overcome the deficiencies the Court identified. *See* Dkt. No. 49. He did so in a second amended complaint, *see* Dkt. No. 51, and another round of motions to dismiss by the same three defendants followed. *See* Dkt. Nos. 60, 67. Because the Court finds that the newly-added allegations are not sufficient to save the repleaded claims, the Court again dismisses the allegations against Caltrans, Lott, and Fielder.

**FACTUAL BACKGROUND**

The main fact allegations in Eberhard's lawsuit are summarized in the Court's prior motion to dismiss order. *See* Dkt. No. 49 at 1-3. To recap briefly, Eberhard reported for The Willits News ("TWN") newspaper on a construction project called the Willits Bypass Project. He alleges that after a campaign of harassment against him by CHP officers, he was arrested early in the morning of July 23, 2013, after a protest took place on the project site. After his arrest was

condemned by a number of newspapers, CHP Chief Bridget Lott and Caltrans District 1 Director Charlie Fielder wrote a joint letter to the editor stating that Eberhard was arrested because he had "trespassed" and "refused a lawful order to exit." They later published a modified letter stating that Eberhard was directed by an officer to leave and that he was arrested not because of his profession but because he refused to leave a construction site. Lott also wrote to a journalism organization called the Society of Environmental Journalists, defending the CHP's actions in the Eberhard case.

Eberhard's second amended complaint is now the operative complaint in this case, and broadly speaking, it adds two new sets of allegations to patch up the claims the Court found insufficiently pleaded in its previous order. It alleges that Caltrans was responsible for CHP's behavior because of a contractual relationship between Caltrans and CHP known as the "COZEEP" -- short for Construction Zone Enhanced Enforcement Program -- that provides for CHP security on or near the site of Caltrans projects. *See* Second Amended Complaint ("SAC") ¶¶ 28-37, Dkt. No. 51. Under the COZEEP contract, Caltrans is financially responsible for CHP's personnel costs, *see* SAC ¶ 29, specifies tasks for CHP to perform, *id.* ¶ 30, and is required to prepare daily reports signed by the Caltrans project supervisor and the senior CHP officer assigned to the project site, *id.* ¶ 31.

The second amended complaint adds that Lott and Fielder were responsible not just for the post-arrest letters, but also for Eberhard's arrest. The most specific allegations on this score are found at paragraphs 32 and 33 of the second amended complaint:

> 32. Under the COZEEP contractual arrangement, as soon as a month before Eberhard's arrest, CHP Chief Lott specifically notified CALTRANS Director Fielder that CHP would not take action on the site against those individuals entering unauthorized on to the site until and unless the very head of CALTRANS, Director Malcolm Dougherty, provided direction to the very head of CHP, Commissioner Joseph Farrow.
>
> 33. In an email, dated June 20, 2013, to CHP Commissioner Warren Stanley, Chief Lott confirmed that CALTRANS had been informed that any direction from CALTRANS with respect to individuals trespassing on the bypass project site was to come directly to her from the Director level at CALTRANS, which is believed and thereon alleged to be a reference to Director Fielder.

2

The second amended complaint also alleges that Lott told TWN's editor about a week after the arrest that she had been made aware of a May 21, 2013 incident where Eberhard says he was shoved by a CHP officer. *See id.* ¶¶ 70, 47. Finally, the second amended complaint refers to emails indicating that on one occasion on June 27, 2013, Caltrans directed CHP to remove trespassers from the project right of way, and on another occasion, Lott and Fielder agreed that no action would be taken by CHP against a specific protester without direction from "the highest levels at CALTRANS." *See id.* ¶¶ 34-35.

The complaint contains other new allegations,[1] but the Court focuses on the ones summarized above, since they go to the deficiencies identified in the prior order.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that the defendants are liable for the misconduct alleged. *Id.* While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal quotes omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## DISCUSSION

The moving defendants seek to dismiss counts five (a First Amendment retaliation claim), six (a due process "stigma-plus" claim), eight (a state law false arrest and false imprisonment claim), and twelve (declaratory relief), with respect to Lott, Fielder, and Caltrans, as well as Eberhard's request for injunctive relief against Caltrans.

---

[1] For example, the complaint details various pseudonymous comments on social media that were allegedly posted by a Caltrans employee, *see id.* ¶¶ 22-23, and an incident where Eberhard promised a place in a Caltrans press tour of the project site but was left behind in the parking lot, *see id.* ¶ 41.

3

## I. FIRST AMENDMENT RETALIATION CLAIM

Eberhard's First Amendment retaliation claim is alleged against Lott and Fielder, but fails to satisfy Rule 12(b)(6) with respect to both defendants because he has not adequately pleaded that they had a retaliatory motive or that their actions had a chilling effect on First Amendment activities.

### A. Retaliatory Motive

A necessary element to any retaliation claim against a government official under the First Amendment is that deterring or chilling the plaintiff's speech was a "substantial or motivating factor" in the official's conduct. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 916 (9th Cir. 2012) (en banc). Eberhard correctly points out that this motive can be shown through circumstantial evidence, *see Mendocino Environmental Center v. Mendocino Cnty.*, 192 F.3d 1283, 1300-01 (9th Cir. 1999), and circumstantial allegations are what he must rely on, since he does not allege the existence of any "smoking gun" statements from Lott or Fielder that reveal their animus against Eberhard's reportage. But the allegations that Eberhard makes have alternative and more plausible explanations than retaliatory intent. Under *Bell Atl. Corp. v. Twombly*, such alternative explanations fatally undermine the sufficiency of the pleadings. 550 U.S. 544, 567-68 (2007).

Eberhard contends that the fact that Lott and Fielder published their initial statements about his arrest three days after the event shows retaliatory motive. But as the Court previously stated, this timing can be explained just as plausibly by a desire to make their point of view heard before the end of the news cycle, rather than by animus against Eberhard. *See* Dkt. No. 49 at 6:16-20. Eberhard also points to various instances of allegedly unfair treatment at the hands of Caltrans and CHP -- being excluded from the project site despite having an escort, and being treated more harshly than other protesters on the morning of July 23, 2013. *See, e.g.*, SAC ¶¶ 48 at 22:1-11, 41 at 15:1-9. The problem is that even if these actions were indicative of a desire to retaliate against Eberhard for his journalism, none of them are attributed to Lott and Fielder. Indeed, Eberhard concedes in his brief that Lott "did not personally engage in the persistent pattern of harassment and intimidation to which Eberhard was subjected in the months preceding his arrest." *See* Dkt. No. 68 at 11:22-23. Eberhard goes on to contend that Lott's letter to the Society of Environmental

4

Journalists falsely stated that he was "originally acting as part of a group of protesters" but remained after the other protesters had left the site as requested -- and that Lott should have known that this statement was false because she later acknowledged to Eberhard's editor that he was a photojournalist, and because CHP's arrest report noted that Eberhard was a member of the press and had "entered the site from a different area than w[h]ere the protesters were gathered." *See* SAC ¶¶ 71, 73. But Lott's characterization of Eberhard in her letter is not necessarily inconsistent with the arrest report: the fact that he was a journalist and entered the site from a different area does not preclude "acting as part of a group of protesters." Indeed, Lott's letter itself implicitly acknowledges that Eberhard was a member of the media; it simply says that on that occasion he had assumed another role. *See id.* ¶ 71. In any event, it is simply implausible that writing a letter with a debatable characterization of the events set forth in Eberhard's arrest record is evidence that Lott intended to retaliate against Eberhard for his speech. Finally, Eberhard states that Lott acknowledged being aware of one earlier incident involving Eberhard, and oversaw the officials at whose hands Eberhard suffered mistreatment. *See* SAC ¶¶ 70, 8. Neither of these allegations shows that she intended to retaliate against Eberhard.

Because Eberhard has failed to show a retaliatory motive, his First Amendment retaliation claim fails. For the sake of completeness, the Court will also explain why he has not properly alleged that Lott and Fielder's actions had a chilling effect, independently undermining the adequacy of the First Amendment retaliation claim.

**B.     Chilling Effect**

A plaintiff alleging First Amendment retaliation must also show that the defendant's actions had a chilling effect on the plaintiff or "would chill or silence a person of ordinary firmness from future First Amendment activities." *See Lacey*, 693 F.3d at 916. Eberhard's bases his claim that Lott and Fielder's letters had a chilling effect mainly on his editor's decision to take him off the Willits bypass story, the same argument he made and the Court rejected last time around. *See* Dkt. No. 49 at 9:9-18. He argues, as he must, that it is irrelevant to the First Amendment analysis that the actions taken against him were by his editor, rather than the government actor defendants. On the contrary, it is very relevant. Otherwise, there is no making

5

sense of *Gini v. Las Vegas Metro. Police Dep't*, which held that defamation by a public official is insufficient to state a First Amendment retaliation claim unless the official knows or reasonably should have known that the defamation would cause others to deprive the plaintiff of a federally-protected right.  40 F.3d 1041, 1044-45 (9th Cir. 1994) ("For any defamation and damage flowing from it, Gini has a tort remedy under state law, not under the First Amendment.").  Eberhard presents no plausible allegations that a federally-protected right of his was infringed as a result of Lott and Fielder's statements, much less that they knew or reasonably should have known that their statements would have that result.  Eberhard's sole citation in support of his position, *Cooper v. Dupnik*, 924 F.2d 1520, 1535 n.28 (9th Cir. 1991), is *dicta* addressing the availability of damages for loss of employment and residence inflicted by third parties in the context of a stigma-plus claim, not liability under the First Amendment retaliation claim being considered here.  If Lott and Fielder's letters defamed Eberhard, his remedies lie in a defamation claim; the mere fact that they are public officials does not transform their actions into a constitutional violation.

      Eberhard has added some additional allegations to bolster his claim of a chilling effect in paragraph 113 of the second amended complaint, which states in part that "[i]t is believed and thereon alleged that other CHP officers on the bypass project site similarly believe the false and defamatory implications from Eberhard's arrest and the statements issued by Lott and Fielder in connection with that arrest, and consequently Eberhard … has had undue time restrains placed on his access to newsworthy events while within the bypass project area …."  But even putting aside the adequacy of the confusing circumlocutions in which these allegations are couched, these acts cannot form the basis for Eberhard's chilling effect because they were not committed by Lott or Fielder, and there is no plausible allegation that Lott and Fielder knew or reasonably should have known that they would result from their statements.  Eberhard "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Lott and Fielder are not automatically responsible for the actions of the CHP officers.

## II. FOURTEENTH AMENDMENT "STIGMA-PLUS" CLAIM

Although defamation by a government official alone does not constitute an actionable violation of the Constitution, a government action that combines the "stigma of a damaged reputation" with the deprivation of some "protected liberty or property interest or a status recognized by the state" can violate the due process clause of the Fourteenth Amendment. *See WMX Techs., Inc. v. Miller*, 197 F.3d 367, 376 (9th Cir. 1999) (en banc). The latter deprivation is the "plus" in what has come to be referred to as a "stigma-plus" claim. At oral argument, Eberhard pointed to two alleged "pluses": retaliation in violation of the First Amendment, and his arrest in violation of the Fourth Amendment. The previous section explained why the former theory is inadequately pleaded, and this section explains why the latter is as well.

Eberhard's "stigma-plus" claim, which is alleged against Lott and Fielder, fails because the second amended complaint contains no plausible, non-conclusory allegations of actions taken by Lott or Fielder, as opposed to CHP's officers, that violated Eberhard's Fourth Amendment rights. Eberhard alleges that Lott needed a green light from a Caltrans director in order to take action against unauthorized entrants, which at best might permit an inference (albeit a tenuous one) that Lott received authorization from Caltrans to proceed against Eberhard based on the fact that Eberhard was arrested. *See* SAC ¶¶ 32-33. But not all actions against unauthorized entrants are Fourth Amendment violations. That Lott personally authorized CHP action against Eberhard early the morning of July 23, 2013, stretches the bounds of what can plausibly be inferred from the complaint; that she or Fielder ordered (or even merely took some action that inexorably led to) an illegal arrest is neither adequately alleged nor inferable from what is alleged. It is the latter allegation that Eberhard needs to make out in order to successfully plead a "stigma-plus" claim against Lott and Fielder based on their violating his Fourth Amendment rights.

Consequently, the Court dismisses count six of the second amended complaint, which is alleged against Lott and Fielder.

## III. FALSE ARREST AND FALSE IMPRISONMENT

The second amendment complaint also alleges state law false arrest and false imprisonment claims against CHP and Caltrans -- and, in contrast to the first amended complaint,

7

against Lott and Fielder. Lott and Fielder were added even though the Court prohibited adding new causes of action or parties in its prior order. *See* Dkt. No. 49 at 14:16-17 ("No new causes of action or parties may be added -- the amendments may seek to cure only the defects in the dismissed claims"). Even though this would be reason enough to dismiss these claims with respect to Lott and Fielder, the Court proceeds to dismiss them on the merits as well.

False imprisonment under California law is the "unlawful violation of the personal liberty of another." *Asgari v. City of Los Angeles*, 63 Cal. Rptr. 2d 842, 850 (Cal. Ct. App. 1997). False arrest is not a different tort; it is merely "one way of committing a false imprisonment." *Collins v. City & Cnty. of San Francisco*, 123 Cal. Rptr. 525, 526 (Cal. Ct. App. 1975). With respect to Lott and Fielder, the claim clearly fails because Eberhard has not shown their personal involvement in his arrest. "[A] chief of police is not personally liable for the tortious acts of his subordinates 'unless he has directed such acts to be done or has personally co-operated therein,'" or if he has countenanced the tortious acts." *See Kangieser v. Zink*, 134 Cal. App. 2d 559, 285 P.2d 950 (Cal. App. Ct. 1955). While Eberhard concedes the lack of any allegations that Caltrans, Fielder, or Lott actually ordered the CHP officers to arrest Eberhard, he claims that this can be reasonably inferred from the fact that a Caltrans employee witnessed Eberhard's arrest, the existence of the COZEEP contract, and the emails suggesting that approval from Caltrans was needed before CHP would take action against unauthorized entrants to the project site. *See* SAC ¶¶ 28, 31-34, 37.

As discussed in the previous section, however, the allegations that Eberhard points to at most suggest that consent from Lott, Fielder, and Caltrans was needed before action would be taken against trespassers, but they do not suggest that any of those defendants ordered or countenanced Eberhard's allegedly unlawful arrest the morning of July 23, 2013. Absent an allegation from which such an order or authorization can be inferred, the claim is inadequately pleaded and must be dismissed with respect to those three defendants.

## IV.  QUALIFIED IMMUNITY AND DECLARATORY RELIEF

The Court's rulings with respect to the substantive claims discussed above mean that the Court need not consider Lott and Fielder's qualified immunity defenses, and that Eberhard's

1  claims for declaratory and injunctive relief against Caltrans, Lott, and Fielder fail for the reasons
2  given in the Court's prior order.  *See* Dkt. No. 49 at 13:17-14:11.

**CONCLUSION**

After the hearing on the motions that are the subject of this order, Eberhard filed a motion to file a third amended complaint with additional allegations.  *See* Dkt. No. 73.  The Court is mindful that Federal Rule of Civil Procedure 15(a)(2)'s instruction that "[t]he court should freely give leave when justice so requires" must be "applied with extreme liberality" in this circuit.  *See C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 985 (9th Cir. 2011) (quoting *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003)).  As a result, Eberhard will be given one last opportunity to amend his claims with respect to Caltrans, Lott, and Fielder.  The Court will not set a deadline, and suggests that Eberhard wait until discovery has progressed sufficiently for him to be confident that his amended allegations will not need further refinement.  The Court provisionally denies his motion to file a third amended complaint with respect to the new allegations against Caltrans, Lott, and Fielder, so that Eberhard can evaluate its adequacy in light of the Court's order, but if he chooses to, he is welcome to use his one remaining chance to amend by renewing the motion.  The Court does not deny the motion to file a third amended complaint with respect to the new allegations against CHP Officer Epperson; that motion will be briefed and heard on the current schedule.  Defendants' motion to continue the hearing date and the deadline to file oppositions to the motion to file a third amended complaint is denied as moot.  *See* Dkt. No. 76.

**IT IS SO ORDERED.**

Dated: March 3, 2015

_____
JAMES DONATO
United States District Judge